**Commonwealth v. Lovato**

*Joseph N. Stanichak,* Assistant District Attorney, for Commonwealth.

*Harry E. Knafele, Richard E. Smith,* and *John P. Dohanich,* Assistant Public Defenders, for defendants.

SALMON, *J.,* July 21, 1975.—These defendants have filed motions in arrest of judgment and for a new trial. They were tried together and convicted by a jury of violating section 907(b) of the Crimes Code of December 6, 1972, P. L. 1068 (No. 334), 18 PS §907 which provides:

"A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally."

The act defines "weapon" as used in this section as follows:

"[A]nything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.": 18 PS §907(c).

The Commonwealth proved that all three defendants were in an automobile owned by Redlinger which made an illegal turn in the downtown business section of Ambridge on March 11, 1974, about 10:40 p.m. This was observed by a patrol car of the Ambridge Police Department driven by Patrolman Strauss, accompanied by Patrolman Sabol. The patrol car followed defendants about two and a half blocks and stopped them. Lovato was driving, Manno was in the right front seat, and Redlinger was in the back seat.

Patrolman Strauss approached the car on the left and talked with the driver Lovato, Sabol approached the car on the right and talked with Manno. The defendants appeared to have been drinking and Redlinger was holding a drink when the car was stopped. On questioning, defendants said they were from Pittsburgh, that they had been in Ambridge drinking but they could not name the bar. Manno's apparent nervousness aroused the suspicions of Patrolman Sabol, who asked Manno what was in the console between the two front bucket seats and at the left hand of Manno. Manno replied, "nothing." The officer asked him to open the console. He did and a loaded revolver

came into view which was removed by Officer Sabol. It was a Sentinel 22-caliber, 9-shot revolver, fully loaded, bearing serial no. 1978140.

The three defendants were taken to the Ambridge Police Department where they were further questioned. All three defendants denied ownership of the revolver. With this the Commonwealth rested.

Each defendant demurred to the evidence. The demurrers were overruled.

Each defendant took the stand and testified concerning the circumstances which brought them together at the time of their arrest, and each was cross-examined at some length. It is sufficient for our present purpose to say that all defendants resided in the East Liberty section of Pittsburgh and had been acquainted with each other for a period of years. On Saturday evening preceding this arrest, Redlinger and Lovato visited several clubs and bars in the Verona area far into the night. In the earlier hours of Sunday morning they slept in the car. Later on Sunday they returned to East Liberty, obtained some additional cash and picked up Manno. On Sunday evening they revisited clubs and bars in Verona and continued drinking. They again slept in the car for a few hours Sunday night and Monday morning. They then drove to Ambridge. They say the reason for the trip to Ambridge was that Lovato had some acquaintance there, apparently his mother-in-law, and that he had been told he might obtain part-time employment at a club in Ambridge. However, there is no indication that he discussed employment with any prospective employer while they were in Ambridge. They visited one or more drinking establishments in Ambridge and, according to Lovato, were starting on their way back to Pittsburgh when the arrest occurred. Officer Sabol said that all three defendants denied the ownership of the gun and, in their testimony in this trial, all three likewise denied ownership of the gun.

In the course of our charge, we instructed the jury as follows:

"The remaining language in the statute is that this weapon be on the person with the intent or in possession of the Defendants with the 'intent to employ it criminally.' Now, that's pretty broad language and we leave it to you to determine under all of the evidence in this case whether there was an intent to employ the gun criminally. We think the possession of the gun in and of itself, under all these circumstances surrounding the possession of the gun, may very well constitute an inference or an indication of an intent to use the weapon criminally. And we leave that question for your determination under the language of the statute and under all of the evidence in the case."

After considering the briefs and arguments of counsel and reviewing the entire record, our principal concern is whether that portion of our charge was a correct statement of the law.

The statute under which these indictments are drawn appears to be the successor to section 416 of the former Criminal Code of June 24, 1939, P. L. 872, §§101, et seq., as amended, 18 PS §4416. That statute, which made it a misdemeanor to carry any deadly weapon concealed upon the person, contains the following provision:

"The jury trying the case may infer such intent from the fact the defendant carried such weapon."

No such provision is included in section 907 of the Crimes Code of 1972.

A somewhat similar problem arises under section 904 of the Criminal Code of 1939, 18 PS §4904, which makes it a misdemeanor to possess burglary tools. The statutory inference provision is not included in section 904. Consequently, our appellate courts have held that to sustain a conviction under this section the Commonwealth must prove (1) possession, (2) that the item possessed is within the terms of the statute, and

(3) that the possession by defendant was with intent to use the same for a felonious purpose: Commonwealth v. Clinton, 391 Pa. 212, 137 A. 2d 463 (1958); Commonwealth v. Dionisio, 178 Pa. Superior Ct. 330, 116 A. 2d 109 (1955).

In Dionisio, supra, the conviction of possession of burglary tools was sustained, but there the Commonwealth proved that defendant had in his possession sketches and diagrams of various safes in use in the Philadelphia area and this was held to be a sufficient circumstance indicating intent to create a question for the jury.

In Commonwealth v. Whitman, 199 Pa. Superior Ct. 631, 186 A. 2d 632 (1962), a conviction for possession of burglary tools was sustained. There defendant, at the time of arrest, was in the company of two co-defendants and their automobile contained burglary tools. The two co-defendants were convicted of burglary and possession of burglary tools. Defendant Whitman was acquitted of the burglary charge but was convicted of possession of burglary tools. The Superior Court held that the evidence of his association with defendants indicates a length of association and a degree of association sufficient to create an issue for the fact finder as to whether he had knowledge of the presence of burglary tools and their intended use. In other words, it seems to be the established law in Pennsylvania that, unless the statute creates inference of guilty knowledge or criminal intent, the Commonwealth has the burden of proving the same by either direct or circumstantial evidence.

A careful review of the record in this case satisfies us that the Commonwealth has produced no evidence whatever of any fact or circumstance from which the jury could properly conclude that defendants possessed this weapon with criminal intent. We are

therefore compelled to grant the motion in arrest of judgment presented by each defendant.

We point out to the district attorney for his consideration that one or more of these defendants may very well be subject to prosecution under the firearms provisions of the Crimes Code of 1972, supra, secs. 6101, et seq., 18 PS §§6101, et seq.

We also suggest to the district attorney that he take whatever procedures may be required by law to confiscate the firearm which was produced in evidence in this case and destroy the same as contraband. We point out that each defendant has testified under oath that he does not own the gun and never had any permit to carry it. We further direct that said weapon shall not be returned to any of these defendants without an appropriate court order first obtained.

We would also call to the attention of the legislature its failure to include a statutory inference of criminal intent in section 907 of the Crimes Code of 1972. We observe that this section was adapted from §5.06 of the Model Penal Code drafted by the American Law Institute. The Model Penal Code does contain such a statutory inference. We refer to §5.06 (2) which is as follows:

"Presumption of Criminal Purpose from Possession of Weapon. If a person possesses a firearm or other weapon on or about his person, in a vehicle occupied by him, or otherwise readily available for use, it shall be presumed that he had the purpose to employ it criminally, unless:

"(a) the weapon is possessed in the actor's home or place of business;

"(b) the actor is licensed or otherwise authorized by law to possess such weapon; or

"(c) the weapon is a type commonly used in lawful sport.

" 'Weapon' means anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have; the term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon."

(Model Penal Code, reprint of tentative draft no. 13, p. 66.)

We strongly urge that if section 907 of the Crimes Code, supra, is to accomplish its obvious purpose, it should be revised and amended so that it follows more closely the Model Penal Code and includes the statutory inference of criminal intent.

### ORDER

And now, July 21, 1975, for the reasons set forth in the foregoing opinion, the motion of each defendant in arrest of judgment is granted and defendant is discharged.